IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CV-24-D

| | |
|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) **ORDER** ) |
| BUILDING BLOCKS PEDIATRICS, PLLC, DORI J. THOMAS, MICHAEL THOMAS, KRISTI WOODS EDWARDS, and CLYDE EDWARDS, | ) ) ) ) ) ) |
| Defendants. | ) |

On January 23, 2018, Wells Fargo Bank, National Association ("Wells Fargo" or "plaintiff") filed a complaint against Building Blocks Pediatrics, PLLC ("Building Blocks"), Dori J. Thomas, Michael Thomas, Kristi Woods Edwards, and Clyde Edwards, alleging breach of contract on a promissory note and guaranties [D.E. 1]. On March 16, 2018, Michael Thomas answered the complaint and counterclaimed [D.E. 22]. On the same date, Clyde Edwards and Kristi Woods Edwards answered the complaint, and Clyde Edwards counterclaimed [D.E. 23]. On April 6, 2018, Clyde Edwards voluntarily dismissed his counterclaim [D.E. 31]. On April 17, 2018, Michael Thomas voluntarily dismissed his counterclaim [D.E. 32]. On July 12, 2018, Wells Fargo, Kristi Woods Edwards, and Clyde Edwards jointly stipulated to a dismissal without prejudice [D.E. 38]. On July 19, 2018, the court entered a consent judgment against Building Blocks [D.E. 40]. On August 30, 2019, Wells Fargo moved for summary judgment against Dori J. Thomas and Michael Thomas ("the Thomases" or "defendants") [D.E. 62, 63] and filed a statement of material facts [D.E. 64]. On October 3, 2019, Michael Thomas responded in opposition [D.E. 66] and filed a statement

of material facts [D.E. 67]. On October 17, 2019, Wells Fargo replied [D.E. 68]. As explained below, the court grants Wells Fargo's motion for summary judgment.

I.

On April 10, 2013, the Thomases executed a Wells Fargo SBA Lending Loan Application ("the application"). See D. Thomas Dep. [D.E. 64-1] 31–32; M. Thomas Dep. [D.E. 64-1] 37. The application states: "[I]f the business owner is married, the spouse's signature is not required unless he or she is a co-owner of the business." [D.E. 64-1] 11; M. Thomas Dep at 40–41. The application also included a "Verification of intent to seek Joint Credit," which states: "Enter each co-applicant's name below if Applicant is applying for joint credit with one or more co-applicant(s). Applicant's initials to the left certify that Applicant intends to apply for joint credit with each co-applicant(s)." [D.E. 64-1] 11. Michael Thomas signed and initialed the application. See id.

On August 19, 2013, Wells Fargo loaned $866,100 to Building Blocks. See Compl. [D.E. 1] 2; Pl. Ex. A [D.E. 1-2] (promissory note). On that same date, Building Blocks executed a promissory note ("note" or "loan") in favor of Wells Fargo. See D. Thomas Dep. at 33; Pl. Ex. A at 1. The note states: "Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company . . . Fails to do anything required by this Note and other Loan Documents." Pl. Ex. A at 1–2. In connection with the note, the Thomases each executed an unconditional guaranty agreement ("guaranty"). See Pl's Exs. B & C [D.E. 1-3, 1-4]. The guaranty states: "Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note" and "Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor." Ex. B at 1; Ex. C at 1. It also states: "Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs." Ex. B at 2; Ex. C at 2. Wells Fargo and the Thomases modified the note

2

twice. Specifically, on June 5, 2014, the Thomases signed an acknowledgment and consent which stated that they "hereby consent to the foregoing Note Modification and acknowledge that their Guaranties dated August 19, 2013 remain in full force and effect." [D.E. 64-1] 22.[1] On November 25, 2015, the Thomases signed an acknowledgment to the second modification agreement which states:

> The parties signing this agreement (each an "Obligor" and collectively, "Obligors") each hereby expressly waive, release and absolutely and forever discharge Lender and Wells Fargo & Company and their present and former shareholders, directors, officers, employees, attorneys, insurers, and agents, and their heirs, personal representatives, successors and assigns, from any and all liabilities, claims, demands, actions and causes of action, whether known or unknown, liquidated or unliquidated, and whether contingent or matured, direct or indirect, that Obligors, or any of them may now have or have had prior to the date hereof, or that may hereafter arise with respect to acts, omissions or events occurring prior to the date hereof, arising out of, or in any way connected with, the Loan, the loan documents, any "swap agreement" (as defined in 11 U.S.C. Section 101) between any Obligor and Lender, or any banking product or service that [i]s associated with the Loan or any Obligor's lending relationship with Lender.

Id. at 25.[2]

Building Blocks failed to make the monthly payments and defaulted on the note. See Compl. ¶ 15; Ans. [D.E. 29] ¶ 15. At Building Blocks's request, Wells Fargo received the net sale proceeds of Building Blocks's business personal property, which had been collateral security for the note. See Compl. ¶ 16; Ans. ¶ 16. Wells Fargo applied the net sale proceeds against the balance of the note. See Compl. ¶ 16; Ans. ¶ 16. On May 2, 2017, Wells Fargo sent an acceleration and demand letter

---

[1] Michael Thomas admits that he signed the third page of the first modification agreement, but "specifically denied that [he] was a party to the First Modification Agreement or received any consideration for signing the third page of the First Modification Agreement." [D.E. 57] 3.

[2] Michael Thomas admits that he signed the fifth page of the second modification agreement, but "specifically denied that [he] received any consideration for signing the fifth page of the Second Modification Agreement." [D.E. 67] 4.

3

to the Thomases that requested payment of all sums due under the loan. See Pl. Ex. F [D.E. 1-7]; Compl. ¶ 18; Ans. ¶ 18. On November 29, 2017, Wells Fargo sent a second acceleration and demand letter to the Thomases that again requested payment of all sums due under the loan. See Pl. Ex. G [D.E. 1-8]; Compl. ¶ 19; Ans. ¶ 19. The second demand letter stated that "Wells Fargo intends to enforce the attorneys' fees provisions contained in the Loan Documents. However, N.C. Gen. Stat. § 6-21.2 provides that if the outstanding balance due under the Loan Documents is paid in full within five (5) days from the date of this letter, then the attorneys' fees provisions shall be unenforceable." Pl. Ex. G at 2.

Wells Fargo has not been paid what is due under the loan agreement. See Compl. ¶ 20; Ans. ¶ 20. As of August 30, 2019, Wells Fargo is owed $ 782,836.88, not including attorneys' fees and costs. See Treadway Dec. [D.E. 64-1] 4 ¶ 7.

II.

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 378 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See

4

Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Harris, 550 U.S. at 378.

A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. See Anderson, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of plaintiff's position [is] insufficient . . . ." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that affect the outcome under substantive law properly preclude summary judgment. See Anderson, 477 U.S. at 248.

III.

Wells Fargo asserts a breach of contract claim against Michael Thomas for failing to make payment under the note. See Compl. ¶¶ 36–41. Under North Carolina law, a breach of contract claim involves two elements: (1) the existence of a valid contract and (2) breach of the terms of that contract. See McLamb v. T.P. Inc., 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005); Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 845 (2000). A breach of a contract occurs where there is "[n]on-performance[,] . . . unless the person charged . . . shows some valid reason which may excuse the non-performance; and the burden of doing so rests upon him." Cater v. Barker, 172 N.C. App. 441, 447, 617 S.E.2d 113, 117 (2005), aff'd, 360 N.C. 357, 625 S.E.2d 778 (2006) (quotation omitted); see Abbington SPE, LLC v. U.S. Bank, Nat'l Ass'n, 352 F. Supp. 3d 508, 517 (E.D.N.C. 2016), aff'd, 698 F. App'x 750 (4th Cir. 2017) (per curiam) (unpublished); Michael Borovsky Goldsmith LLC v. Jewelers Mut. Ins. Co., 359 F. Supp. 3d 306, 311 (E.D.N.C. 2019).

Thomas admits that he executed the application, that Wells Fargo loaned $866,100 to

5

Building Blocks, that he executed the guaranty for the note, that Building Blocks defaulted on the note by failing to pay, and that the loan has not since been repaid. See [D.E. 67] ¶¶ 1, 3–5, 6, 8, 15, 20. Thus, Michael Thomas breached his contract with Wells Fargo.

In opposition, Michael Thomas cites the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 et. seq., and its implementing regulations as an affirmative defense to Wells Fargo's claim. Michael Thomas contends that Wells Fargo violated the ECOA by requiring him to serve as a guarantor on the note for his wife, Dori Thomas. See [D.E. 66] 5–12.

The ECOA forbids creditors from discriminating against any applicant "on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract)." 15 U.S.C. § 1691(a) (emphasis added).[3] Two regulations implementing the ECOA are relevant here. First, 12 C.F.R. § 202.7(d)(1) states:

> Rule for qualified applicant. Except as provided in this paragraph, a creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested. A creditor shall not deem the submission of a joint financial statement or other evidence of jointly held assets as an application for joint credit.

12 C.F.R. § 202.7(d)(1). Second, 12 C.F.R. § 202.7(d)(5) states:

> Additional parties. If, under a creditor's standards of creditworthiness, the personal liability of an additional party is necessary to support the credit requested, a creditor may request a cosigner, guarantor, endorser, or similar party. The applicant's spouse may serve as an additional party, but the creditor shall not require that the spouse be the additional party.

---

[3] The court assumes without deciding that an "applicant" under the ECOA also includes guarantors, such as Michael Thomas. See id., § 1691a(b); 12 C.F.R. § 202.2(e) ("Regulation B"); RL BB Acquisition, LLC v. Bridgemill Commons Dev. Grp., LLC, 754 F.3d 380, 384 (6th Cir. 2014); cf. Hawkins v. Community Bank of Raymore, 761 F.3d 937, 940–41 (8th Cir. 2014) (concluding that "applicant" under the ECOA does not include guarantors), aff'd by an equally divided court, 136 S. Ct. 1072 (2015).

6

12 C.F.R. § 202.7(d)(5). Together, these two regulations clarify that a creditor cannot require the signature of an applicant's spouse unless that spouse is a joint applicant. A joint applicant "refers to someone who applies contemporaneously with the applicant for shared or joint credit. It does not refer to someone whose signature is required by the creditor as a condition for granting the credit requested." Supplement I to Part 202–Official Staff Interpretations, 12 C.F.R. § 202.7(d)(1). Essentially, a creditor may require the signature of a joint applicant for a loan application, but it cannot require the signature of a spouse merely by virtue of marital status.

Michael Thomas cannot use the ECOA as an affirmative defense to avoid his $782,836.88 debt. See [D.E. 66] 10–12; Riggs Nat'l Bank of Washington, D.C. v. Linch, 829 F. Supp. 163, 168–69 (E.D. Va. 1993), aff'd, 36 F.3d 370 (4th Cir. 1994); CMF Virginia Land, L.P. v. Brinson, 806 F. Supp. 90, 95–96 (E.D. Va. 1992). Rather, the ECOA provides other remedies, including "a federal civil action for actual damages, punitive damages not to exceed $10,000, attorneys' fees or injunctive relief" for ECOA violations. Brinson, 806 F. Supp. at 95; 15 U.S.C. § 1691e(a)–(d). A court "may [also] grant such equitable and declaratory relief as is necessary to enforce the requirements imposed under [the ECOA]." 15 U.S.C. § 1691e(c). This court, however, declines Michael Thomas's invitation to read section 1691e(c) to permit a party to use the ECOA to assert an affirmative defense to a breach of contract claim.

In reaching this conclusion, the court acknowledges that some courts have interpreted section 1691e(c)'s "equitable and declaratory relief" language to allow a defendant to assert an affirmative defense of recoupment for an ECOA violation. See, e.g., RL BB Acquisition, LLC, 754 F.3d at 387–88 ("We see no command in ECOA or Regulation B to deny defendants the ability to assert a violation as a recoupment defense."); Wells Fargo, N.A. v. Triplett, No. 5:12-CV-67-H, 2013 WL 5217847, at *4 (E.D.N.C. Sept. 17, 2013) (unpublished); In re Westbrooks, 440 B.R. 677, 682–83

7

(Bankr. M.D.N.C. 2010); RL REGI N. Carolina, LLC v. Lighthouse Cove, LLC, 229 N.C. App. 71, 78–80, 748 S.E.2d 723, 728 (2013), rev'd, 367 N.C. 425, 762 S.E.2d 188 (2014). That analysis, however, conflicts with the ECOA's text and its implementing regulation. The proper remedy under the ECOA for an ECOA violation is an independent civil action asserting such a claim or a counterclaim under the ECOA. See Brinson, 806 F. Supp. at 95 ("A counterclaim certainly can be premised upon a violation of the ECOA, but such a violation cannot be alleged to avoid basic liability on the underlying debt."); 15 U.S.C. § 1691e(a)–(d).[4] Indeed, in some cases, "the amount of the underlying debt and the ECOA damages will cancel each other out, and the defendant will wind up owing nothing to the lender who violated the ECOA." Brinson 806 F. Supp at 96. Here, the court rejects Michael Thomas's atextual use of the ECOA as an affirmative defense to a breach of contract claim.

Alternatively, even if a party can assert an ECOA violation as an affirmative defense to a breach of contract claim, Michael Thomas cannot do so here because he is a joint applicant with Dori Thomas. Requiring a joint applicant to sign a loan application does not violate ECOA. See Ballard v. Bank of Am., N.A., 734 F.3d 308, 310 (4th Cir. 2013). As the Fourth Circuit held in Ballard, "[n]ot every signature required of a borrower's spouse . . . constitutes credit discrimination under ECOA." Id. Although Michael Thomas properly notes that Wells Fargo normally cannot require an applicant's spouse to serve as a guarantor on a loan, he ignores the joint applicant exception. See 12 C.F.R. § 202.7(d)(1); Ballard, 734 F.3d at 310–11. Michael Thomas signed and initialed the "Verification of intent to seek Joint Credit," which states: "Enter each co-applicant's name below if Applicant is applying for joint credit with one or more co-applicant(s). Applicant's

---

[4] Michael Thomas filed counterclaims against Wells Fargo for violating the ECOA, see [D.E. 22] 8–11, but voluntarily dismissed those counterclaims. See [D.E. 32].

8

initials to the left certify that Applicant intends to apply for joint credit with each co-applicant(s).” [D.E. 64-1] 11. Moreover, the application specifically states: "[I]f the business owner is married, the spouse's signature is not required unless he or she is a co-owner of the business." Id. Requiring a signature from a "de facto" joint applicant spouse does not violate the ECOA. See Ballard, 734 F.3d at 310–11; see also RL BB Acquisition, LLC, 754 F.3d at 388–89; Midlantic Nat'l Bank v. E.F. Hansen, 48 F.3d 693, 699–700 (3d Cir. 1995); Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs., 595 F. Supp. 800, 808 (E.D. Pa. 1984). Michael Thomas expressly applied for joint credit with Dori Thomas, and Wells Fargo also made him aware that his signature was not needed because of his marital status. Thus, Wells Fargo did not violate the ECOA.

Alternatively, putting aside the "joint applicant" exception, Michael Thomas has not presented any evidence concerning Dori Thomas's independent creditworthiness, an essential element of an ECOA violation. "[A] creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested." 12 C.F.R. § 202.7(d)(1) (emphasis added); see Ballard, 734 F.3d at 310; Ramsdell v. Bowles, 64 F.3d 5, 9 (1st Cir. 1995). Accordingly, Wells Fargo permissibly required Michael Thomas's signature because he was a joint applicant, and not because he was Dori Thomas's spouse. Thus, Wells Fargo did not violate the ECOA.

Alternatively, Michael Thomas waived any ECOA defense under both federal and state law.[5] As for federal law, "[a] valid waiver can prevent a borrower from recovering under a federal statute.

---

[5] The Fourth Circuit has not yet determined whether to "evaluate ECOA waivers under the federal totality-of-the-circumstances approach or the state contract-law approach." Ballard, 734 F.3d at 313 n.2. Michael Thomas has waived any ECOA claim or defense under both approaches.

9

A court will enforce a waiver unless it was obtained through intentional misconduct; was not knowing and voluntary; or would thwart the legislative policy which [the statute] was designed to effectuate." Ballard, 734 F.3d at 313 (footnote, citations, and quotations omitted). As for North Carolina law, a "waiver is a voluntary and intentional relinquishment of a known right or benefit." Adder v. Holman & Moody, Inc., 288 N.C. 484, 492, 219 S.E.2d 190, 195 (1975). Moreover, a waiver "is a contract and is therefore subject to the recognized rules of construction of contracts." Id.; see McGuire v. Lord Corp., No. 5:19-CV-25-FL, 2020 WL 1987357, at *5 (E.D.N.C. Apr. 27, 2020) (unpublished). For guaranty contracts, "[t]he extension of credit by the obligee under the guaranty contract supplies consideration for both the principal debt and the guaranty." Gillespie v. DeWitt, 53 N.C. App. 252, 260, 280 S.E.2d 736, 742 (1981); see Branch Banking & Tr. Co. v. Morrison, 191 N.C. App. 173, 176, 661 S.E.2d 784, 786 (2008). Of course, loan modification agreements are contracts themselves. See Ussery v. Branch Banking & Tr. Co., 368 N.C. 325, 338, 777 S.E.2d 272, 281 (2015); McDonald v. Bank of New York Mellon Tr. Co., Nat'l Ass'n, 259 N.C. App. 582, 587, 816 S.E.2d 861, 864–65 (2018).

As for federal law, Michael Thomas, as guarantor, signed a second modification agreement that waived any ECOA defense. It stated in relevant part: "The parties signing this agreement . . . each hereby expressly waive, release and absolutely and forever discharge Lender and Wells Fargo & Company . . . from any and all liabilities, claims, demands, actions and causes of action, whether known or unknown, liquidated or unliquidated, and whether contingent or matured, direct or indirect . . ." [D.E. 64-1] 25. In exchange, Wells Fargo deferred payments due from April 15, 2015 to December 15, 2015, until August 19, 2023, and also reduced payments due on January 15, 2016, February 15, 2016, and March 15, 2016 to $2,840.00. See id. at 24. Even viewing the record in the light most favorable to Michael Thomas, Wells Fargo did not engage in intentional misconduct, the

10

waiver was knowing and voluntary, and the waiver does not thwart the ECOA's legislative policy. See Ballard, 734 F.3d at 311–314; [D.E. 64-1] 11, 28. As for North Carolina law, the second loan modification agreement was a valid contract with the proper exchange of consideration. Dori Thomas provided a waiver while Wells Fargo granted a deferment and delay of payment. See id. at 24–25. The second loan modification agreement's waiver provision also binds Michael Thomas as guarantor. He not only signed it, but also received consideration through Wells Fargo's concessions. See Gillespie, 53 N.C. App. at 260, 280 S.E.2d at 742; Branch Banking, 191 N.C. App. at 176, 661 S.E.2d at 786; [D.E. 64-1] 25, 28. Thus, Michael Thomas has waived his ability to assert an ECOA claim or defense under both federal and state law.[6]

IV.

In sum, the court GRANTS Wells Fargo's motion for summary judgment against Michael Thomas [D.E. 62]. The court also ENTERS judgment against Dori Thomas. Michael Thomas and Dori Thomas owe Wells Fargo $782,836.88, interest, attorneys' fees, and costs in accordance with the note and guaranties. Wells Fargo may submit a motion for costs in accordance with the Federal Rules of Civil Procedure and this court's local rules. The clerk shall close the case.

SO ORDERED. This _26_ day of May 2020.

JAMES C. DEVER III
United States District Judge

---

[6] Although the second loan modification agreement's waiver provision does not mention affirmative defenses, the waiver applies because an ECOA violation is an independent cause of action (or counterclaim) and not an affirmative defense. See [D.E. 64-1] 25; Riggs, 829 F. Supp. at 168–69; Brinson, 806 F. Supp. at 95.

11